**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0940-24

RICHARD T. ROSS,

    Plaintiff-Appellant,

v.

VALERIE M. ROSS,

    Defendant-Respondent.

_____

Submitted May 5, 2026 – Decided July 10, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0177-18.

Law Office of Steven P. Monaghan, LLC, attorneys for appellant (Kristin S. Pallonetti, on the briefs).

Hegge & Confusione, LLC, attorneys for respondent (Michael Confusione, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Richard T. Ross appeals from a November 8, 2024 Family Part order,[1] granting, in relevant part, defendant Valerie M. Ross's motion seeking reimbursement from plaintiff for expenses related to the parties' children's extracurricular activities, specifically, "dance, fashion, lacrosse, baseball and tutoring in excess of $2,500." Plaintiff alleges he never agreed to share those costs, and the court's order ran contrary to the parties' term sheet, incorporated by reference in the Dual Judgment of Divorce (DJOD), which mandated plaintiff's obligations for the children's extracurricular activities be "agreed upon" by the parties. Plaintiff further asserts the court effectively reversed without a hearing a prior post-judgment order requiring consent of both parties to shared costs for the children's activities. We have considered the record under applicable legal principles, and we affirm.

I.

The parties were married in 2005. Their four children were born during the marriage and before the parties divorced on October 25, 2018. The DJOD incorporated the parties' May 21, 2018 term sheet. Relevant here, paragraph ten

---

[1] The motion court's order included nineteen rulings, but plaintiff restricts his appeal to the portion of the order requiring him to reimburse defendant for extracurricular activity costs to which he never agreed.

A-0940-24

of the term sheet allocated obligations for the children's extracurricular activities as follows:

> The parties shall share the cost of the children's extracurricular activities expenses based upon their pro rata income shares as set forth on the Child Support Guidelines. At the current time, the children are engaged in dance, fashion, lacrosse, and baseball and those are all agreed-upon activities. Extracurricular Expenses shall include tutoring if necessary. In the event [plaintiff]'s expenses exceed $2,500 per year, the activities shall be agreed upon.

Years of post-judgment litigation followed, which included disputes over the parties' relative obligations for the children's activities. A previous motion judge entered a February 24, 2023 order clarifying plaintiff's obligation under the term sheet. The order stated:

> Plaintiff's obligation to pay in excess of $2,500 per year in extracurricular activities must be agreed upon in writing by the parties. If not agreed upon, plaintiff shall have no obligation in excess of $2,500 per year. GRANTED. Pursuant to Paragraph 10 of the term sheet incorporated into the parties' [DJOD], the parties were to share the children's extracurricular activity expenses based on their pro rata shares as set forth in the child support guidelines. In the event that plaintiff's expenses exceed $2,500 per year, the term sheet requires that the "activities shall be agreed upon."[2]

---

[2] The parties have not included on appeal the record of the earlier motion. Thus, we are unable to ascertain the precise nature of the motion or the relief sought.

On May 3, 2024, defendant moved to enforce litigant's rights seeking reimbursement from plaintiff in the amount of $21,887.63 for his share of outstanding child-related expenses incurred by defendant from December 2020 through March 2024. Defendant also sought an order directing that "child expenses reimbursable by . . . plaintiff shall include, college testing fees and prep courses, driving lessons and the marginal cost of car insurance coverage for the children."

Plaintiff opposed defendant's request and cross-moved for various other relief. The motion court heard oral argument on the parties' motions, addressing each of the parties' pending applications.

Regarding defendant's motion seeking reimbursement for the children's extracurricular activities, plaintiff argued the language of the DJOD stating if "[plaintiff]'s expenses exceed $2,500 per year, the activity shall be agreed upon," required his agreement to all expenses for any activities exceeding $2,500 per year. He contended the February 2023 order confirmed he had no obligation for contributing to expenses above $2,500 per year absent the parties' express agreement.

Defendant argued the parties agreed to plaintiff's responsibility to pay his portion of expenses for the activities outlined in the term sheet at the time the

parties entered that agreement. Thus, defendant contended restricting plaintiff's contribution to $2,500 annually ran afoul of the clear "intent" of the agreement that preemptively provided for shared coverage of the costs of the children's activities at the time of the divorce—"dance, fashion, lacrosse, baseball and tutoring in excess of $2,500." Defendant further argued the court should also require plaintiff to contribute to the costs of the children's car insurance because car insurance is a "necessary" expense for children.

Thereafter, the court issued its November 8, 2024 order, addressing each of the parties' claims, granting in part and denying in part defendant's application related to the funding for the children's activities. The motion court first found plaintiff in violation of litigant's rights for failing to reimburse defendant for his share of certain child-related expenses from December 2020 through March 2024. The court reasoned, although the parties must agree to plaintiff's contributions for extracurricular activities beyond $2,500 per year, the parties expressly agreed in the term sheet that dance, fashion, lacrosse, baseball, and tutoring were "agreed-upon activities," for which plaintiff's agreed to share costs exceeding $2,500. Finding no agreement regarding "any other types of expenses," the court denied the application for reimbursement for activities beyond those included in agreement. The court reconciled its order with the

5

February 2023 order, noting the earlier order merely confirmed plaintiff would have no obligation for expenses exceeding $2,500 unless the extracurricular activities were agreed upon in writing.

Next, the court denied in part defendant's request to direct plaintiff to reimburse defendant $21,997.63 for his percentage share of outstanding child-related expenses incurred by defendant from December 2020 through March 2024. The court found plaintiff responsible for his share of the expenses above $2,500 per year for the agreed-upon activities, but declined to order a specific reimbursement amount because "the evidence [wa]s not clear" concerning the specific breakdown of that amount attributed to "expenses above $2,500 . . . for dance, fashion, lacrosse, baseball, and tutoring." The court invited the parties to participate in mediation or submit "specific proofs" to resolve the precise amount owed.

The court also granted in part and denied in part defendant's request that child-related expenses reimbursable by plaintiff include college testing fees and prep courses, driving lessons, and car insurance for the children. Specifically, the court found college testing fees, prep courses, and driving lessons were not agreed-upon activities, and plaintiff was not responsible for those expenses unless agreed upon in the future. However, the court determined plaintiff was

A-0940-24

responsible for his pro rata share of the children's car insurance, finding this was "not an expense that can be agreed upon as it is mandatory for licensed drivers to be insured." This appeal followed.

II.

On appeal, plaintiff reprises his arguments before the motion court, asserting the court erroneously interpreted and failed to enforce the parties' term sheet as written, which alleviated him from responsibility for any activities-related expenses above $2,500 to which he did not expressly agree. Additionally, plaintiff argues that the court failed to adhere to the doctrines of res judicata and collateral estoppel in ruling on the issue of contributions for extracurricular activities previously resolved by the prior motion court's February 2023 order.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). Trial court rulings are "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

A-0940-24

We review a Family Part's factual findings under an abuse of discretion standard. See Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009). A court abuses its discretion "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted). We, however, review all legal conclusions de novo. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

Matrimonial settlement agreements, like term sheets, are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions. J.B. v. W.B., 215 N.J. 305, 326 (2013). "[W]hen the intent of the parties is plain[,] and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016). "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Ibid. Nor should a contract "be interpreted to render one of its terms meaningless." Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 497 (App. Div. 2003). "At the same time, 'the law

8

grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Ibid. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

Here, neither party disputes the validity of the term sheet. Its controlling language is contained in one, four-line paragraph. Broken down to its core elements, the provision states: (1) the "parties shall share the cost of the children's extracurricular activities" in accordance with their income and the child support guidelines; (2) "agreed-upon activities" are "dance, fashion, lacrosse, and baseball" and "tutoring if necessary"; and (3) if plaintiff's "expenses exceed $2,500 per year," the children's activities must be "agreed upon."

Like the motion court, we detect no ambiguity in the term sheet's limiting plaintiff's contribution for extracurricular activities exceeding $2,500 annually to only "agreed-upon" activities. We similarly accept the plain language distinctly identifying certain activities as already "agreed upon." Thus, we

9

conclude the motion court properly construed the parties' term sheet as memorializing in writing the parties' agreement plaintiff would be required to contribute to the costs of those enumerated activities, even if they were to exceed $2,500 per year. Accepting plaintiff's proposed interpretation of the term sheet would render "meaningless" the express designation of dance, fashion, lacrosse, and baseball as "agreed upon" activities. See Cumberland Cnty. Improvement Auth., 358 N.J. Super. at 497. We see no reason to parse out costs for tutoring as the term sheet clearly preemptively provided: "Extracurricular Expenses shall include tutoring if necessary."

Accordingly, we are satisfied the court did not fail to enforce the parties' term sheet in requiring plaintiff to reimburse defendant for his share of the cost of the children's extracurricular activities. To the contrary, it enforced the parties' agreement as written.

We also reject plaintiff's argument the court's order departed from or altered the February 2023 order. On its face, the February 2023 order merely confirms "in the event that plaintiff's expenses exceed $2,500 per year, the term sheet requires that the activities shall be agreed upon." The February order requires the agreement to be "agreed upon in writing by the parties." Thus, as

A-0940-24

the motion court held, the term sheet constituted the written agreement by the parties to the "agreed-upon" activities specifically identified in the provision.

We find plaintiff's remaining res judicata and collateral estoppel arguments lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We add only our satisfaction that the motion court properly considered defendant's application for enforcement of litigant's rights and did not alter the parties' express agreement or prior court order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0940-24